```
      IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA
```

TAMMIE L. JACOBS,              )
                               )
         Plaintiff,            )
                               )
v.                             )     Case No. CIV-10-356-KEW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
         Defendant.            )

## OPINION AND ORDER

Plaintiff Tammie L. Jacobs (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on May 8, 1969 and was 40 years old at the time of the ALJ's decision. Claimant completed her high school education and two years of college. Claimant has worked in the past as an assembler, forklift operator, automobile rental clerk, and clerical office manager. Claimant alleges an inability to work beginning June 3, 2005 due to limitations resulting from a back injury, left hand injury, and arthritis.

**Procedural History**

On September 19, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 5, 2010, an administrative hearing was held before ALJ Charles Headrick in Tulsa, Oklahoma. On March 26, 2010, the ALJ issued an unfavorable decision on Claimant's applications. On August 11, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as an automobile rental clerk.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to perform a proper analysis at steps 4 and 5; (2) failing to perform

a proper evaluation of the medical source evidence; and (3) failure to perform a proper credibility determination.

**Step Four and Five Analyses**

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post lumbar laminectomy with continued back pain and migraine headaches. (Tr. 12). He found Claimant retained the RFC to perform a full range of light work. (Tr. 13). Ultimately, after consultation with a vocational expert, the ALJ determined Claimant could perform her past relevant work as an automobile rental clerk as well as other unskilled, sedentary work including clerical mailer and bonder assembler. (Tr. 25).

Claimant contends the ALJ failed to formulate proper hypothetical questions for the vocational expert employed in the case. At the administrative hearing, the ALJ asked the vocational expert if he had "studied the record of Tammy (sic) Jacobs and heard her testimony regarding her work history" which the expert acknowledged he had. (Tr. 56). The vocational expert then recited Claimant's past relevant work and the skill level of each. Id.

The ALJ then asked the vocational expert to assume Claimant to be 36 years old with a high school education, the ability to read, write and use numbers and to assume the physical capacity to perform work consistent with the limitations of Exhibit 6F. (Tr. 57).

5

Exhibit 6F is the Physical Residual Functional Capacity Assessment of Claimant completed by Dr. Kenneth Wainner on August 29, 2006. Dr. Wainner found Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. Dr. Wainner further determined Claimant could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 235).

The vocational expert identified only Claimant's past relevant work as an auto rental clerk to accommodate the limitations found by Dr. Wainner. (Tr. 57). He also found Claimant could perform other work as a clerical mailer and bond assembler. Id.

The ALJ next asked the vocational expert to assume the same individual with the capacity to perform work consistent with Exhibit 8F. Id. Exhibit 8F is the Physical Residual Functional Capacity Assessment of Claimant completed by Dr. Kenneth Wainner on May 11, 2007. In this assessment, Dr. Wainner determined Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. (Tr. 348). Dr. Wainner further determined Claimant could occasionally climb ramps and stairs but

6

never climb ladders, ropes, or scaffolds, frequently balance, kneel and crouch, and occasionally stoop and crawl. (Tr. 349). He also found Claimant to be limited in handling or gross manipulation. (Tr. 350).

Under these limitations, the vocational expert stated Claimant could not return to any of her past relevant work. (Tr. 58). He then identified the occupations of surveillance monitor, callout operator, and usher to fit these limitations. Id.

The ALJ then asked the vocational expert to assume the same hypothetical person with limitations consistent with Exhibit 14F. (Tr. 58). Exhibit 14F is the Physical Residual Functional Capacity Assessment on Claimant completed by Dr. Thurma Fiegel on December 11, 2008. Dr. Fiegel found Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. (Tr. 410). Dr. Fiegel further determined Claimant could occasionally climb ramps and stairs, ladders, ropes, or scaffolds, and occasionally balance, kneel, crouch, stoop, and crawl. (Tr. 411).

Claimant contends the hypothetical questions posed by the ALJ were not sufficiently precise because they had "no specific limitations for any of the physical demands of sitting, standing,

7

walking, lifting, carrying, pushing and pulling, or postural functions of stooping, crouching, reaching and handling, as required." The incorporation of the various RFC assessment forms adequately covered all of these area of physical demand. This Court attributes no error to the use of the assessments to establish the criteria under which the vocational expert was to render an opinion.

Claimant also contends the ALJ failed to incorporate all of her impairments – namely, migraine headaches – in his questioning of the vocational expert. The ALJ did identify Claimant's migraine headaches as a severe impairment. (Tr. 12). On November 19, 2008, Claimant was attended by Dr. Margaret Rich Stripling. Dr. Stripling noted Claimant's migraines had resolved with the use of medication. (Tr. 446). Dr. Jeanne Edwards ordered testing including an MRI of her head, an angiogram and electroencephalogram. The MRI was negative and the other testing revealed poor modulation of dominant activity and other abnormalities but no signs of cerebellar dysfunction. (Tr. 498-503). After adding Topomax to her medication regimen, Claimant reported "excellent control" of her headaches on December 31, 2009. (Tr. 505). Considering the medical record supports the ALJ's finding that her migraines were controlled by medication, it was not error for him to not include the condition in his hypothetical questioning of the vocational expert.

Claimant next contends the ALJ erred by not including

depression or anxiety in his hypothetical questioning of the expert. On August 29, 2006, Dr. Sally Varghese completed a Psychiatric Review Technique on Claimant. She determined Claimant suffered from disturbance of mood, accompanied by a full or partial manic or depressive syndrome as well as an anxiety disorder but found the conditions to be not severe with no functional limitations. (Tr. 219-31). The medical record does not indicate Claimant suffered from depression or anxiety which would affect her ability to engage in substantial gainful activity.

Claimant next asserts the ALJ failed to perform a proper analysis at step four of the sequential evaluation by including all of her impairments and examining the mental and physical demands of her past relevant work. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ accomplished this requirement and included all of Claimant's impairments as discussed.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). As discussed, the ALJ in this case inquired of the vocational expert as to the demands of Claimant's past relevant work. (Tr. 56-57).

9

The expert testified as to the work requirements of each of Claimant's past relevant jobs. Id. In this regard, the ALJ fulfilled his duty in the second phase.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. The ALJ asked the vocational expert whether someone at Claimant's determined RFC could perform the jobs which constituted Claimant's past relevant work. Consequently, the ALJ fulfilled his obligation in the third phase. This Court finds no fault in the ALJ's step four analysis.

**Evaluation of Medical Source Evidence**

Again, Claimant centers his argument on the hypothetical questions posed to the vocational expert and the accuracy of the authors of the assessments referenced in the questions. Claimant contends Dr. Wainner referenced normal grip strength and normal use of hands in his assessment of August 29, 2006 when the consultative examiner did not make such a finding. Claimant is incorrect. The consultative examination by Dr. Mohammed Quadeer on August 17, 2006 found Claimant to have grip strength of 4/5 on the left and 5/5 on the right with the ability to do both gross and fine manipulation with the hands. (Tr. 213). Contrary to Claimant's argument, Dr.

Wainner also recognized the decreased range of motion and pain in Claimant's back. (Tr. 234). Dr. Wainner accommodated this condition in the limitations. Id. The assessment upon which the ALJ relied for his hypothetical question was not erroneous.

Claimant makes the same argument regarding hand and grip problems with regard to Dr. Wainner's assessment of May 11, 2007. Again, the hand limitations were recognized by Dr. Wainner as reflected in Dr. Quadeer's examination. (Tr. 348-49). The limitations on heel and toe walking did not result in an unstable gait or use of assistive devices, which was in conformity with Dr. Quadeer's findings. Id. In short, Dr. Wainner's assessment considered all of Dr. Quadeer's findings.

With regard to Dr. Fiegel's assessment, she clearly considered the consultative examiner's findings. (Tr. 410). No error is attributed to Dr. Fiegel's report.

Claimant also criticizes the ALJ for not giving Dr. Fiegel's opinion more weight than the other two in reaching an RFC. This Court agrees with Defendant that Claimant is attempting to have it both ways - criticizing Dr. Fiegel's report while urging that the ALJ should have adopted it. This Court finds no error in the ALJ's opinion in this regard. The ALJ properly discussed the weight he attributed to each assessment and the reasons for preferring one

over the other.

**Credibility Analysis**

Claimant asserts the ALJ did not perform a proper credibility analysis. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

12

other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

In his decision, the ALJ sufficiently linked the medical evidence to the findings on credibility.  In particular, the ALJ identified significant contradictions between the medical findings and Claimant's assertions of impairment.  "[A] formalistic factor-by-factor recitation of the evidence" is not required to support the necessary analysis.  <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ's discussion and the references to the objective record contained in it, considered in toto, is sufficient to support the credibility findings of the ALJ.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 28th day of March, 2012.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE